IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 15, 2003

**ANDREW MOORE v. STATE OF TENNESSEE**

Post-Conviction Appeal from the Circuit Court for Bedford County
No. 9038    Lee Russell, Judge

No. M2003-00332-CCA-R3-PC - Filed February 17, 2004

The petitioner, Andrew Eakin Moore, entered an open plea of guilty to three counts of attempted aggravated robbery, two counts of aggravated assault, and one count of resisting arrest. As a result of the guilty pleas, the petitioner received an effective sentence of ten years on all six counts, but the petitioner was ordered to serve 365 days in jail and then be placed on community corrections for the balance of the sentence. Following his release from the jail sentence, the petitioner violated his community corrections sentence and was ordered to serve the balance of the sentence. In this post-conviction proceeding, the petitioner attacks his conviction on the basis of ineffective assistance of counsel. We affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

N. Andy Myrick, Jr., Fayetteville, Tennessee for the appellant, Andrew Moore.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; Mike McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

In November of 2000, the petitioner was indicted by the Bedford County Grand Jury on three counts of attempted aggravated robbery, two counts of aggravated assault, and one count of resisting arrest. Pursuant to settlement with the State, the petitioner entered an open plea of guilty to the indictment. During the plea hearing, the prosecutor stated that if the case had gone to trial, the State would have proven that the petitioner attempted to rob a Food Lion grocery store in Shelbyville, Tennessee, by entering the store, brandishing a razor blade, and demanding money from two women working behind a counter. When the clerks did not comply with the petitioner's request, he ran from the store. The police responded shortly thereafter and witnessed the petitioner leaving a tanning salon located in the same shopping mall as the Food Lion store. It was later discovered that the petitioner had also unsuccessfully attempted to rob the clerk in the tanning salon. After a brief pursuit, the petitioner was apprehended. During the arrest, the petitioner struggled with the police. The petitioner agreed that these were the facts that the State would attempt to prove at trial.

On March 1, 2001, following a sentencing hearing, the petitioner was sentenced to: (1) five years for the attempted aggravated robbery and five years for aggravated assault, both of which were based on conduct which occurred at the tanning salon, to be served concurrently; (2) eleven months and twenty-nine days at seventy-five percent for resisting arrest, to be served concurrently to the charges stemming from the conduct at the tanning salon; and (3) five years for the attempted aggravated robbery and five years for the aggravated assault, both of which were based on conduct that occurred at Food Lion, to be served concurrently. The judge ordered the petitioner to serve the two effective five year sentences consecutively, for a total effective sentence of ten years on all counts contained in the indictment. However, the trial court allowed the petitioner to serve 365 days in jail, rather than the Department of Correction, and then provided for the petitioner's release on community corrections for the balance of the sentence.[1]

The petitioner did not appeal the sentencing hearing. The petitioner served his jail time and was released on community corrections. Several hours after his release from jail, however, the petitioner was involved in an altercation with a drug dealer in Knoxville after attempting to purchase illegal drugs. A revocation warrant was issued, and the petitioner pled guilty to violation of his community corrections. By agreement, the petitioner received no time in addition to his original ten-year sentence.

---

[1]It is questionable as to whether the petitioner was ever eligible for community corrections in the first place. His convictions for crimes of violence using a weapon would ordinarily disqualify him from such a program unless his mental health problems and substance abuse might make him otherwise eligible. Tenn. Code Ann. § 40-36-106. However, since the community corrections sentence has been revoked and the post-conviction petition addresses the original guilty plea, this potential issue is moot.

The petitioner subsequently filed a <u>pro se</u> petition for post-conviction relief, primarily on the basis of ineffective assistance of counsel. Counsel was appointed, the petition was amended, and, following an evidentiary hearing, the petition was dismissed by the trial court.


Post-Conviction Hearing

An evidentiary hearing was held on the post-conviction petition on February 7, 2002. The petition was dismissed after the post-conviction court heard testimony from the petitioner and trial counsel. The evidence at the hearing consisted of the following.

The petitioner testified that, at the time of the hearing, he was incarcerated in the Tennessee Department of Correction. He recounted his original charges and sentencing, and reported that he was serving the balance of his effective ten year sentence as a result of violating the terms of his community corrections.

The petitioner testified that he met with trial counsel only once for about "twenty to thirty minutes" prior to the entry of the guilty plea. The petitioner expressed to trial counsel that he felt that it would be a good idea to allow the trial court to sentence him so that he could appeal his sentence. He also felt that it might be possible to get the aggravated assault counts dismissed because aggravated robbery "already had . . . an element of aggravated, . . . assault in it." According to the petitioner, trial counsel "basically said that there's nothing we can do about that. It's just the way it was and you're going to have to go ahead and plead to it." As a result of the conversation with his trial counsel, the petitioner agreed to proceed to plead guilty to the open indictment. However, the petitioner stated that had he known at the time that he could not have been convicted of both attempted aggravated robbery and aggravated assault, he would not have pled guilty to all the charges.

The petitioner met with trial counsel again after the plea acceptance hearing and before his sentencing hearing. At this meeting, the two discussed the possibility of a community corrections sentence as well as the state of the petitioner's mental health. The petitioner told trial counsel that he had a history of mental and emotional problems and that he was diagnosed with bipolar disorder and anxiety disorder two years prior to the offense. During his lifetime, the petitioner was hospitalized at least two times for mental and emotional problems, once when he was fourteen years old and once when he was eighteen years old. The petitioner also suffered from alcohol abuse and was spending time in a treatment center in Shelbyville prior to the offenses which are the subject of the petition. At the sentencing hearing, trial counsel called the petitioner's mother and girlfriend to testify regarding his mental condition at the sentencing hearing, but no doctors were called to testify. After the sentencing hearing, the petitioner claims that trial counsel did not tell him that he could appeal the sentence.

On cross-examination, the petitioner admitted that prior to the entry of the guilty plea, he was aware that the State's offer was to plead to the open indictment and that the State would not accept trial counsel's request to dismiss the aggravated assault charges. The petitioner also agreed that the aggravated assault convictions did not add any additional time to his sentence and that he was happy with the community corrections sentence he received, but that he felt like the ten year sentence was excessive because the trial court improperly applied enhancement factors. Further, the petitioner admitted that when the trial judge asked the petitioner at the sentencing hearing if he had any questions, he did not ask any questions because he did not have any.

Trial counsel testified regarding his experience as an assistant public defender. At the time of the plea and sentencing, trial counsel had been licensed to practice law for approximately thirteen or fourteen years, had an extensive background in criminal law, and had conducted over 200 jury trials.

Trial counsel testified that he discussed the case with the petitioner prior to the entry of the open plea. When asked if he and the petitioner discussed the issue of whether the petitioner could be convicted of both the attempted aggravated robbery and the aggravated assault, trial counsel explained that:

> I know we discussed it. But before - - the State made an offer. . ., which was a to-serve sentence, that . . . [the petitioner] was not willing to accept. . . . [The petitioner] thought he should be given some type of split sentence or some type of community release. I explained to . . . [the petitioner] that the point had come in his case to where we could either do actually one of three things. One is to accept the state's offer which means it would be a to-serve sentence and no application for alternative sentencing. The second option would be to plead open to the indictment. And in that case, he'd have to plead guilty to all counts in the indictment. And the other option was to set the case for trial which was . . . [the petitioner] didn't want to do.

Prior to the plea, trial counsel tried unsuccessfully to negotiate a sentence with the State in which the petitioner would not have to plead to all counts in the indictment. Trial counsel further testified that the petitioner then made the decision to plead to the open indictment after his advice. Trial counsel did not feel that the petitioner received any additional jail time for the aggravated assault convictions because those sentences were to run concurrently with the sentences for the attempted aggravated robbery convictions. Although trial counsel was displeased with the trial court's application of several enhancement factors, he did not recommend appealing the sentence because of the generally favorable outcome. Trial counsel felt that he was successful in introducing a significant amount of evidence regarding the petitioner's mental health history and that he felt the trial court took this evidence into consideration during sentencing. Trial counsel was under the impression that both the petitioner and his family were happy with the outcome of the sentencing hearing and that the petitioner did not express any desire to appeal his sentence. Further, trial counsel testified that the petitioner understood if he challenged the application of the enhancement

-4-

factors on appeal and the court of criminal appeals agreed with his position, he risked the possibility of receiving a sentence in the penitentiary.

At the conclusion of the testimony, the post-conviction court made the following statement:

I do not believe that anything was done by . . . [trial counsel] to discourage this defendant from asking any questions. I do believe during the plea acceptance hearing and I certainly believe that there was a consideration of the possibility of an appeal and that the reason there wasn't an appeal was the result was so good from the defendant's point of view. I mean, I don't think the defendant or anybody else at that point expected, and, certainly, I did not expect the defendant to do what he did immediately or almost immediately upon being released from jail. I think probably everybody in the courtroom was surprised that he wasn't going to do any penitentiary time at all for what he had done.

The post-conviction court subsequently denied the petition for post-conviction relief. On appeal, the petitioner seeks a determination as to whether he was denied effective assistance of counsel because counsel: (1) allowed the petitioner to plead guilty to both attempted aggravated robbery and aggravated assault, two offenses that should have merged, which resulted in an involuntary guilty plea; (2) failed to object to the court's application of several enhancement factors; and (3) failed to adequately investigate the petitioner's mental condition.

Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of

-5-

competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## A. Guilty Plea

The petitioner complains that trial counsel was ineffective "in allowing him to receive separate convictions for aggravated assault and attempted aggravated robbery" because aggravated assault is a lesser-included offense of attempted aggravated robbery. As a result, the petitioner claims that his guilty plea was not knowingly and intelligently entered. The State acknowledges that the post-conviction court concluded that convictions could not be entered on both attempted aggravated robbery and aggravated assault if the assault was incidental to the robbery. However, the State argues that the petitioner suffered no prejudice as a result of the guilty plea because "even if the aggravated assault cases were all dismissed because of the double jeopardy issue, the sentence of ten years would have been the same because of the way in which the sentences for each indictment were run concurrently with one another."

At the outset, we agree that aggravated assault is a lesser-included offense of aggravated robbery under part (a) of the test announced in State v. Burns, 6 S.W.3d 453 (Tenn.1999). See State v. Joel Christian Parker, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850 (Tenn. Crim. App. at Nashville, Dec. 18, 2002), perm. to appeal denied,(Tenn. May 5, 2003); State v. James Eric Alder, No. M1999-02544-CCA-R3-CD, 2000 WL 1606588 (Tenn. Crim. App. at Nashville, Oct. 27, 2000); State v. Jason Carter, No. M1998-00789-CCA-R3-CD, 2000 WL 515930 (Tenn. Crim. App. at Nashville, Apr. 27, 2000), perm. to appeal denied, (Tenn. Nov. 20, 2000). However, the record does

not preponderate against the trial court's finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. The trial court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision. It is apparent that the motivating factor in the petitioner's having pled guilty to an open indictment was the possibility of a sentence to community corrections or some other alternative sentence. Further, the testimony showed that trial counsel never discouraged the petitioner from asking questions at the guilty plea hearing.

We conclude therefore that the record supports the post-conviction court's finding that the petitioner entered his guilty plea voluntarily and knowingly. A claim of ineffective assistance of counsel in the context of a guilty plea conviction is "only relevant to the degree that it shows that [the] plea of guilty was not knowing and voluntary." Housler v. State, 749 S.W.2d 758, 760 (Tenn. Crim. App. 1988) (citing Sherrod v. State, 567 S.W.2d 482 (Tenn. Crim. App. 1978)). When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The transcript of the guilty plea hearing reveals that the trial court carefully and correctly informed the petitioner regarding his constitutional rights, and specifically asked if he understood that he was waiving those rights by pleading guilty. The petitioner responded in the affirmative. Further, he stated that he understood the plea agreement and the significance of the guilty plea hearing, and was entering his guilty plea voluntarily. The trial court obviously believed that counsel and the petitioner, as counsel testified, discussed the propriety of convictions for both attempted aggravated robbery and aggravated assault arising out of the same incident and involving the same victims. The trial judge's comments reflect that he believed counsel's testimony that the petitioner pled guilty to all counts in the indictment to avoid trial and to avoid accepting the State's plea bargain offer that any guilty plea would include a totally incarcerative sentence. As a result the trial court found, and we agree, that the petitioner knowingly and voluntarily entered his guilty plea. Having done so the petitioner has waived any double jeopardy or due process claims arising from his convictions. See, State v. McKinney, 74 S.W.3d 291 (Tenn. 2002); State v. Pendergrass, 937 S.W.2d 834 (Tenn. 1996); both holding that entry of a valid guilty plea waives any constitutional

inequalities except jurisdictional defects. We conclude, therefore, that the evidence shows that the petitioner's guilty plea was knowing and voluntary and that trial counsel was not ineffective in counseling the petitioner to enter a guilty plea in order to receive the benefit of a possible community corrections sentence. As a result of the entry of such a plea the petitioner has waived all non-jurisdictional constitutional defects such as the identity of offenses issue he raises here. See State v. McKinney, 74 S.W.3d 291 (Tenn. 2002) (holding entry of valid guilty plea waives all non-jurisdictional constitutional inequalities .

### B. Application of Enhancement Factors/Right to Appeal the Sentence

The petitioner also argues on appeal that trial counsel was ineffective for failing to object to the trial court's application of several enhancement factors and failing to notify the petitioner that he had a right to appeal the sentence. Specifically, the petitioner argues that trial counsel should have objected to or appealed from the trial court's application of the following enhancement factors: (1) the petitioner's history of previous convictions, Tenn. Code Ann. § 40-35-114(1);[2] (2) the offense involved more than one victim, Tenn. Code Ann. § 40-35-114(3); and (3) the petitioner had no hesitation about committing a crime involving high risk to human life, Tenn. Code Ann. § 40-35-114(10). The State counters, arguing that the record does not preponderate against the post-conviction court's determination that trial counsel's representation of the petitioner was within the range of competence demanded and that there was no prejudice to the petitioner because the sentence would be the same whether or not the trial court improperly applied the enhancement factors.

In order to determine the existence of prejudice in the sentencing process, we must logically review the enhancement factors applied by the trial court in order to determine whether failure to challenge them on appeal prejudiced the appellant. Under this review, the findings of fact of the post-conviction court are conclusive unless the evidence preponderates against them. Tidwell v. State, 922 S.W.2d 497, 499 (Tenn. 1996).

The post-conviction court acknowledged that while the trial court probably improperly applied enhancement factors (3) and (10), "the possible misapplication of the enhancing factors and the failure to challenge the misapplication on appeal" did not result in any prejudice to the petitioner because the effective sentence would be the same even without the application of enhancement factors (3) and (10). The post-conviction court also concluded that the petitioner waived his right to appeal the sentence directly. The record does not preponderate against these findings.

---

[2]2002 Tennessee Public Acts, Chapter 849, section 2(c), which became effective after the petitioner's sentencing in this matter added a new subsection (1) to Tennessee Code Annotated section 40-35-114, relating to acts of terrorism, and redesignated former subsections (1) to (22) as (2) to (23). Therefore, the petitioner's complaints as to the trial court's application of enhancement factors (1), (3) and (10) correspond to the redesignated subsections of (2), (4), and (11). However, because the application of the enhancement factors in this case occurred prior to the addition of the new subsection (1), we will refer to the enhancement factors by their old designations.

We acknowledge that the trial court improperly applied enhancement factors (3) and (10). See State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1995) (holding that enhancement factor (3) may not be applied to enhance a sentence when the defendant is separately convicted of the offenses committed against each victim); State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) (holding that high risk to human life is inherent in an aggravated assault). However, even in light of the erroneous application of two enhancement factors, we cannot conclude that the court erred in imposing the sentence it ordered for each offense or that the effective sentence would have been different had the trial court not applied those enhancement factors. The trial court began with a sentence of three years and enhanced that sentence to five years based on the application of enhancement factors (1), (3), and (10). The petitioner and trial counsel acknowledged at the post-conviction hearing that although trial counsel was not happy with the trial court's application of enhancement factors, he was delighted that the primary goal of keeping the petitioner out of the penitentiary was accomplished. The petitioner did not appeal the sentence directly. We cannot conclude that the record preponderates against the post-conviction court's determination that the misapplication of enhancement factors had no prejudice on the petitioner or that the petitioner was deprived of his right to appeal the sentence. This issue has no merit.

### C. Investigation of Petitioner's Mental Health

Finally, the petitioner argues that he received ineffective assistance of counsel because trial counsel failed to adequately investigate the petitioner's mental condition as a possible defense or mitigating factor. The State disagrees, arguing that the post-conviction court accredited the testimony of trial counsel and that "nothing the . . . [petitioner] claims on appeal in any way undermines the correctness of the post-conviction court's finding."

We must note at the outset that the petitioner's brief cites no authority whatsoever in support of this claim. Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R 10(b). The petitioner, therefore, has waived this assertion. Even if not waived by the petitioner's failure to cite to authority, this issue has no merit. Trial counsel elicited testimony from the petitioner, his mother, and his girlfriend. The trial court heard the testimony and found that the petitioner's mental health was a mitigating factor. There was also evidence of the petitioner's mental health contained in the pre-sentence report. Despite the evidence, the trial court did not give great weight to the mental health of the petitioner as a mitigating factor. The post-conviction court found that the petitioner's mental health history was provided in the pre-sentence report and was presented through testimony at the sentencing hearing. The post-conviction court also found there was no proof at the evidentiary hearing as to what evidence a mental health expert would have presented at sentencing which would have changed the outcome of the sentencing hearing. The record does not preponderate against the post-conviction court's findings. Further, the petitioner has failed to establish that he suffered any prejudice as a result of trial counsel's representation.

## Conclusion

After a thorough review of the record, we affirm the decision of the post-conviction court dismissing the petition for post-conviction relief. The record supports this conclusion as well as the concomitant determination that the petitioner failed to establish either that trial counsel was ineffective or that he was prejudiced by counsel's actions.

_____

JERRY L. SMITH